ORIGINAL

UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAY - 6 2004
U.S. COURT OF
FEDERAL CLAIMS

SPW ENGINEERING GROUP, INC.
1197 Baltimore and Annapolis Boulevard
Arnold, Maryland 21012

Plaintiff

v.

THE UNITED STATES OF AMERICA

Defendant

Civil Action No: 04 794C

# SPW Engineering Group, Inc.'s Complaint

COMES NOW, SPW Engineering Group, Inc., Plaintiff herein, and appeals from the decision of the Contracting Officer denying its claim in connection with Plaintiff's contract to provide certain Hydraulic Test Stands, and in support thereof, Plaintiff states as follows:

**The Parties**

1. Plaintiff SPW Engineering Group, Inc. ("SPW") is a Maryland corporation with its principal place of business in Annapolis, Maryland.

2. Defendant is The United States of America acting through the Department of the Army, NGB (the "Army").

**Jurisdiction**

3. This Court has jurisdiction of this matter under the provisions of 28 U.S.C. § 1491 and 40 U.S.C. § 609(a).

**Factual Allegations and Statement of Claim**

4. On or about May 4, 1999, SPW responded to a request for proposal issued by the Army for the construction of two Hydraulic Test Stands and associated items (the "Test

Stands"), all pursuant to detailed specifications prepared by the Army, to be delivered on a fixed-price basis. The contract was to be awarded as part of a set-aside for small businesses.

5. On or about September 7, 1999, the Army awarded a fixed-price contract, Contract No. DAHA06-99-007, to SPW to construct the Test Stands for $583,000 (the "Contract").

6. On November 18, 1999, SPW delivered its Preliminary Design Review ("PDR") to the Army based on the contract specifications. The Army requested no changes to the PDR and made no changes to the specifications as a result of the information contained in the PDR.

7. On December 3, 1999, SPW delivered its Critical Design Review ("CDR") to the Army based on the PDR and contract specifications. The Army requested no changes to the CDR and made no changes to the specifications as a result of the information contained in the CDR.

8. As a result of discussions with the Army subsequent to December 3, 1999, it appeared that the Army wanted features in the Test Stands that had not been detailed in the specifications nor included in the CDR. No new specifications were produced by the Army. On January 28, 2000, SPW submitted an upgrade proposal to cover the new features.

9. On February 29, 2000, SPW submitted a list of specification changes based on its understanding of the Army's wishes and requested that the required concurrence be made.

10. Notwithstanding the necessity for prompt concurrence by the Army to the changes, it was not until March 30, 2000 that SPW received the required concurrence.

11. As a consequence of the changed specifications and the delays caused by the requests, SPW's costs increased and its schedule was delayed.

12. In late May 2000, the Army requested a change in the Test Stands relating to the design of the pump with respect to interface mounting capabilities (the "Interface Change"). On

June 8, 2000, SPW advised the Army in writing that SPW could make the Interface Change, but could not do so as part of the existing fixed-price contact. SPW also advised the Army that it needed prompt concurrence on pump and motor models to be tested. SPW emphasized in its June 8, 2000 letter that the issues raised in the letter were "extremely important issues and need to be resolved quickly" (emphasis in original).

13. On July 13, 2000, with no word back from the Army, SPW itself prepared and sent a formal proposal to the Army for an increase of $45,980 to accomplish the Interface Change.

14. In July, August, September, October, and November of 2000, SPW made repeated efforts to secure a response from the Army regarding the Interface Change and other open items.

15. On December 1, 2000, over a weekend, SPW received a fax transmission from the Army consisting of a change order for the Interface Change in accordance with the proposal submitted by SPW on July 13, 2000.

16. As a consequence of the delay in receiving the change order for the Interface Change, SPW's schedule was further eroded, its cost of performing the contract further increased, and its business and finances further impacted.

17. In January 2001, SPW advised the Army that SPW had completed testing and was then prepared to deliver Unit 1, with Unit 2 to be ready for delivery within three weeks. The Unit 1 that was ready to be delivered met and in many instances exceeded the specifications called for by the Contract.

18. Shortly thereafter, the Army orally advised SPW that the Test Stands did not have all the functions the Army desired. However, the Army did not then, nor did it ever, claim, nor could it properly do so, that the Test Stands failed to meet the specifications of the Contract.

19. Between January of 2001 and February of 2002, SPW attempted to have the Army accept Unit 1 or to agree to an upgrade proposal to include the new functions the Army desired.

20. Finally, on February 6, 2002, SPW wrote to the Army that "It has come time for SPW to end this contract."

21. The Army responded on February 12, 2002, agreeing that "the contract has come to completion" and, for the first time, authorizing delivery of the Test Stands.

22. SPW delivered the Test Stands in March of 2002.

23. By letter dated February 4, 2003, SPW submitted its certified claim (the "Claim") to the Army pursuant to § 2.212-4 of the Contract.

24. By letter dated May 5, 2003, the Contracting Officer issued his Final Decision denying SPW's claim (the "Final Decision"). A true and accurate copy of the Final Decision is attached hereto as Exhibit A.

**Count I**
**(Breach of Contract – Contract Balance)**

25. SPW repeats and realleges paragraphs 1-24 above, as though fully stated herein.

26. SPW entered into an express contract with the Army.

27. SPW has fully performed all of its obligations under its contract with the Army.

28. The Army has paid SPW $554,405, but has failed and refused to pay the balance of the contract price amounting to $74,575.00 (the "Contract Balance").

29. SPW has made due demand for the Contract Balance, but the Army has failed and refused to pay the Contract Balance.

30. The Army has materially breached its contract with SPW by failing and refusing to pay the Contract Balance.

31. As a direct and proximate result of the Army's breach of its contract with SPW, SPW has suffered damages that were caused proximately by the Army.

32. All conditions precedent to bringing this action have been performed or have occurred.

WHEREFORE, Plaintiff SPW Engineering Group, Inc. demands judgment in its favor and against The United States for the Contract Balance of $74,575.00, plus interest and costs according to law and such other and further relief as is just and appropriate under the circumstances.

**Count II**
**(Breach of Contract – Contract Changes and Delays)**

33. SPW repeats and realleges paragraphs 1-32 above, as though fully stated herein.

34. The Army materially breached the Contract by changing specifications and delaying SPW during the course of the Contract.

35. The Army breached the Contract by failing and refused to accept the Tests Stands in January 2001 when they were ready for delivery.

36. By reason of the Army's breaches of the Contract, and solely as a result of the conduct of the Army, SPW was (a) unable to compete for or take on any new business; (b) obligated to retain staff to meet the expected upgraded proposal requirements even though there was no work for staff to do; (c) unable to pay its bills in a timely manner; and (d) unable to secure new credit and had exhausted all existing lines of credit.

37. SPW was damaged in an amount exceeding $800,000 as direct and proximate result of the Army's breaches of the Contract.

38. All conditions precedent to bringing this action have been performed or have occurred.

WHEREFORE, Plaintiff SPW Engineering Group, Inc. demands judgment in its favor and against The United States for damages, in an amount fair and reasonable but not less than $800,000, to compensate Plaintiff for its losses sustained as a result of Defendants' breach, Plaintiff's costs, interest; and such other and further relief as is just and appropriate under the circumstances.

Dated this 6th day of May 2004.

Respectfully submitted,

SPW Engineering Group, Inc.

By Counsel

Joseph A. McManus, Jr.
MCMANUS, SCHOR,
ASMAR & DARDEN, L.L.P.
1301 Connecticut Avenue, N.W.
Sixth Floor
Washington, D.C. 20036
(202) 296-9260
(202) 659-3732 (fax)

G:\JOE\ClientFiles\SPW\Test Stands\Pld\002A.doc

EXHIBIT
A

**DEPARTMENTS OF THE ARMY AND THE AIR FORCE**
National Guard Bureau
U.S. Property and Fiscal Officer for Connecticut
360 BROAD STREET
HARTFORD, CONNECTICUT 06105-3779

05 May 2003

Contracting Office

Subject: Claim of SPW Engineering Group, Inc. DAHA06-99-C-0007

SPW Engineering Group, Inc.
C/O Lola S. Lea, Law Offices
22 Arnold Road
Freeport, ME 04032

Dear Attorney Lea,

This letter constitutes the Contracting Officer's final decision on the subject claim. This decision has been delayed because the Government technical personnel involved in this contract are currently deployed in support of Operation Iraqi Freedom and have been difficult to communicate with.

There are two separate issues contained in the claim. The Government denies the first claim in part.

The first issue reads as follows:

"The Army has paid SPW $554,405 but has failed and refused to pay the balance of the contract price amounting to $74,575."

The Government has paid SPW $554,405. On 12 February 2002, I sent a letter to SPW directing delivery of all items to the Government regardless of their completion status. That letter stated the following: "Settlement of the final amount due shall be subject to negotiation of a mutual agreement of both parties, after a full and final accounting of the deliveries that you make, and your submission of a detailed request for payment." SPW delivered the products in an incomplete state and also did not perform any installation of the equipment, yet on April 15, 2002 SPW invoiced for the entire contract amount. Recognizing that SPW was due some payment, but not full payment, we did not return that invoice but chose to pay a revised amount. On April 18, 2002, I approved a reduced payment amount. Reductions were made in that invoice as follows:

Subtract $29,150.00 for installation of unit at Groton, CT, that was not performed.
Subtract $29,150.00 for installation of unit at Fresno, CA, that was not performed.
Subtract $ 5,425.00 which represents 10% of unit 1 acceptance, which was not completed.
Subtract $10,850.00 which represents 20% of unit 2 acceptance, which was not completed.

Subject: Claim of SPW Engineering Group, Inc. DAHA06-99-C-0007

In conclusion, the Government has not paid the entire contract amount, but the claim is denied because the Government withheld payment because of non-performance. The amounts withheld represent the Government's estimate of the value of the items of work that were not performed. As stated in my letter of 12 February 2002, settlement of the final amount due shall be subject to negotiation of a mutual agreement of both parties. If SPW has detailed evidence to present to show that the products were installed or that completion percentages were higher then SPW should prepare a proposal for negotiation.

The second issue claims "an amount exceeding $800,000 on account of the damages it sustained by reason of the conduct of the Army."

The second claim is denied in its entirety.

SPW claims that "as a result of the conduct of the Army, SPW was":

a) Unable to take on any new business: SPW offers no evidence that this is the case and only argues that the Government "should have known" that was the case. SPW was free to solicit new business, no significant amount of production remained on these products so even if SPW might have been waiting on Government action, there was little effect on production capability for other contracts.
b) Obliged to retain staff to meet the expected upgrade proposal requirements even though there was no work for staff to do: SPW was not obliged by any direction that the Government made to retain staff. SPW was free at all times to manage the workforce in any way they wished. If laying off the workforce and then rehiring would have increased costs, the Government would have considered an adjustment proposal from SPW. SPW provides no data or evidence to support this.
c) Unable to pay its bills in a timely manner: The Government endeavored to make all progress payments under this project in a timely manner. Verification of the progress made by SPW was difficult due to the inability of SPW to provide the Government with concise reports of the work physically completed. The final progress payment that was decremented because of non-delivery could have been returned to SPW because of the disputed amount, instead the Government chose to pay that invoice quickly at a reduced amount in order to fairly pay SPW for work it had done.
d) Unable to compete for new business: SPW was free to solicit new business, no Government action prevented SPW from competing.
e) Unable to secure new credit and had exhausted all existing lines of credit. Except for the final payment which was adjusted, SPW was paid the amounts that SPW requested for progress throughout the project. If SPW could not repay its credit from those progress payments it cannot be attributed to the Government. SPW has not shown any evidence that the Government's actions caused their credit problems.
f) The entire contract amount was $628,980, SPW is claiming "an amount exceeding $800,000". In order to claim that the Government caused a 128% increase requires that SPW provide specific details and evidence of such increased costs. SPW has not provided any details or evidence.

Subject: Claim of SPW Engineering Group, Inc. DAHA06-99-C-0007

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date that you receive this decision.

The United States of America

Michael S. Mastalski
Chief Warrant Officer Two
Quartermaster Corps
Contracting Officer